Minute Order Form (06/97)


JS-6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5691 | **DATE** | 2/24/2003 |
| **CASE TITLE** | WAL-MART STORES vs. JEAN HUMMELL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at_____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted. Enter summary judgment in favor of defendant and against plaintiff.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | 13 |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | FEB 27 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | 03 FEB 26 PM 5:50 U.S. DISTRICT COURT CLERK | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ADMINISTRATIVE COMMITTEE OF THE WAL-MART STORES, INC. ASSOCIATES' HEALTH AND WELFARE FUND, <br><br>     Plaintiff, <br><br> v. <br><br> JEAN HUMMELL, <br><br>     Defendant. | No. 02 C 5691 <br> Judge James B. Zagel |

**DOCKETED**

FEB 2 7 2003

## MEMORANDUM OPINION AND ORDER

These are cross-motions for summary judgment in a dispute between a Wal-Mart health and welfare plan ("the Plan") and an employee – Jean Hummell – covered under the Plan. Hummell was injured in an accident, and the Plan paid $16,698.10 in medical benefits on her behalf. She subsequently retained a lawyer to prosecute a personal injury case. The attorney, working on a one-third contingency fee, secured a settlement (after the second day of a jury trial) in the amount of $150,000. The lawyer offered to reimburse the Plan for its expenses but only after deducting one-third of the amount to compensate him for securing the recovery. The offer was refused, but there was agreement by Hummell's lawyer to keep the full amount in his client trust fund account until a final judicial decision was made on the question of the lawyer's entitlement to any part of the amount now held in the trust account. This issue has arisen from time to time in this and other courts.

The Plan provides that it has the right to recover 100 percent of the benefits it previously



paid to the extent of any and all of the following payments:

- Any judgment, settlement, or any payment made or to be made by a person considered responsible for the condition giving rise to the medical expense or by their insurers.
- Any auto or recreational vehicle insurance coverages or benefits including, but not limited to, uninsured motorist coverage.
- Business and homeowners medical liability insurance coverage or payments
- Attorney's fees.

The Plan also requires cooperation from covered employees to effectuate its right to recover:

> The Plan requires that you . . . cooperate to guarantee reimbursement to the Plan from third party benefits. Failure to comply with this request will entitle the Plan to withhold benefits due you under the Plan Document. You or your covered dependents may not do anything to hinder reimbursement of overpayment to the Plan after you have accepted benefits.
>
> . . .
>
> Note: All attorney's fees and court costs are the responsibility of the participant, not the Plan.

These rights apply regardless of whether such payments are designated as payment for, but not limited to:

- Pain and suffering
- Medical benefits
- Other specified damages
- Whether the participant has been made whole (i.e. fully compensated for his/her injuries).

Additionally, the Plan has the right to file suit on your behalf against any person or entity considered responsible for the condition giving rise to the medical expenses to recover benefits paid or to be paid by the Plan

Note: If you reside in a state where personal injury protection or medical payment as offered under your automobile/homeowner's policy is mandatory, the Plan takes secondary status.

2

Note: The Plan has first priority with respect to reimbursement of its subrogation lien.

The required cooperation includes a duty by the covered employee to honor the Plan's request to take action, give information, and execute documents to aid the Plan in its enforcement of its right to recovery:

> Subrogation is when Wal-Mart pays your medical charges relating to your accident while waiting for the responsible party to settle. Repayment to the Plan of 100% will be made at the time the settlement is received by the associate, dependent, or their attorney.

The problem here is subject to two characterizations. On one hand, lawyers for covered employees say that Plans which refuse to pay the contingency fee are "free riders" seeking funds recovered by dint of a lawyer's efforts without paying the lawyer his due. On the other hand, the Plans say that paying the lawyers increases the costs of the Plan to its participants or reduces the benefits. Also, the Plan is not contracting with the lawyer and thus should not be bound by its participants' agreements with lawyers of their choosing. Furthermore, they say, a lawyer, who should know of the possible constraints on fees, can get a copy of the Plan and, if it precludes fees, can tell the prospective client that recovery will be reduced by costs and by reimbursement to the plan, and that the fee will be one-third of what remains. Finally, their answer to the "free rider" claim is that the Plan conditions its coverage on the understanding that the covered employee, not the Plan, pays the attorney's fees – that is its "agreement" with its covered employees.[1]

---

[1] No one has referred to any definitive study of the actual economic consequences of the policy here. If a Plan has to pay lawyers, it may have to increase contributions to the Plan or decrease benefits. But if the Plan does not pay lawyers then it may significantly decrease the amount of money it gets in reimbursement or, in the alternative, pay its own lawyers to secure reimbursement and still have to offer less value to its participants. I suspect, but do not know,

If the language of the Plan was the sole reference point, this case would be over. The Plan would win because there is nothing with which Hummell could oppose its dictates. But there is something other than the Plan here – the Illinois common fund doctrine. This doctrine provides that where an attorney's work generates a fund, the attorney is entitled to be paid from that fund. The beneficiaries of the fund are only entitled to the net proceeds of their proportionate share of the legal expense. If the Plan provisions here in issue did not exist, then the Illinois common fund rule would give victory to Hummell. But this case is more complex because the issue is which rule prevails in the context of ERISA, which both sides agreed must govern.

The Seventh Circuit has expressly declined to decide the question presented here. *See Wal-Mart Stores, Inc. Associates' Health and Welfare Plan v. Wells*, 213 F.3d 398 (7th Cir. 2000). It has, however, refused to foreclose common fund applications in cases in which the Plan does not itself explicitly foreclose it. *Blackburn v. Sundstrand Corp.*, 115 F.3d 493 (7th Cir. 1997). This Plan does explicitly foreclose the use of the common fund to reduce the reimbursement to which the Plan would be entitled. In contrast, the Supreme Court of Illinois has held that even specific plan language cannot preempt application of common fund rules. *Bishop v. Burgard*, 764 N.E.2d 24 (Ill. 2002). In fact, that Court had earlier said that the common fund rules create a separate state law cause of action unrelated to ERISA, a claim for *quantum meruit* existing

---

that the Plan will be better off if it does not pay a share of the contingency lawyer fees. I think this is so because the medical expense reimbursement amount is, in most cases, a fairly small fraction of the total recovery sought in personal injury actions. There is enough economic incentive in these cases to motivate injured persons and their lawyers to proceed even at reduced rewards which follow enforcement of Plan provisions. I do not vouch for this conclusion because economic analysis often contradicts what we think are logical conclusions.

entirely apart from the federal law. It is a right of the *attorney* to sue. The attorney's rights are not created by or dependent in any way on the ERISA plan. *Scholtens v. Schneider*, 671 N.E.2d 657 (Ill. 1996). *Bishop* was a reconsideration of the Court's prior ruling in light of *Egelhoff v. Egelhoff*, 532 U.S. 141 (2001), which held that ERISA can and does preempt even state laws of general application – in that case a state law which automatically revoked designation of a spouse as a beneficiary of a non-probate asset when a decree of divorce is entered. Obviously, the Supreme Court of Illinois thought *Egelhoff* did not alter the preemption principles on which it had relied.

The judges of this Court are split on the subject. Judge Reinhard, who having served for many years in trial and appellate courts of Illinois has substantial familiarity with Illinois law, said that:

> [b]ecause the common fund doctrine operates to modify unambiguous and bargained for provisions in the employee benefit plans, [I am] unable to agree with the conclusion of the Illinois Supreme Court that any effect the doctrine has upon employee benefit plans is 'simply too tenuous, remote or peripheral to warrant a finding that the doctrine relates to such plans.'

See *Estate of Lake v. Marten*, 946 F. Supp. 605 (N.D. Ill. 1996). Judge Darrah agreed with this position, *see Great West Life and Annuity Ins. Co. v. Moore*, 133 F. Supp. 2d 677 (N.D. Ill 2001), as did then Magistrate Judge Lefkow, *see McCotter v. Longo*, No. 95 C 5985, 1997 WL 158325 (N.D. Ill March 31, 1997). However, Judge Lefkow reconsidered her view in *Administrative Committee of Wal-Mart Stores, Inc. v. Varco*, No. 01 C 8277, 2002 WL 31189717 (N.D.Ill. Oct 02, 2002). She cited *Blackburn's* language stating "[T]he Illinois common-fund doctrine is not preempted . . . *Scholtens v. Schneider* . . . holds that [ERISA] does not preempt the common-

5

fund doctrine. We agree with *Scholtens*," 115 F. 3d at 495. She recognized that the decision in *Bishop* would allow an attorney to sue in quasi-contract and recover a share of fees from the amount to be reimbursed to a Plan. She then noted that under *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204 (2002), a Plan could not sue a beneficiary under ERISA to secure reimbursement. Absent diversity (or other unusual circumstances), the reimbursement claims would be made in state courts. Finally she reasoned:

> It would be anomalous, however, for this court in this rare case in federal court to adhere to the view that the common fund doctrine does not apply where the "run of the mine" case of this sort will be decided in the Illinois courts and governed by *Bishop*. If *Bishop* was wrongly decided, only the United States Supreme Court or the legislature can overrule it.

2002 WL 31189717 at *6.

The policy underlying this holding is one that lay at the heart of *Erie R. Co. v. Tompkins,* 304 U.S. 64, 74-77 (1938). Where the law governing similar cases is radically different depending on the accident of federal versus state jurisdiction, most would think this wrong, and, perhaps, aggravated by the fact that all but a few cases would be decided by one of the two jurisdictions. These anomalies do exist throughout the law. I suspect most federal judges with but a few cases would try to harmonize their ordinary legal rules with those of the state courts deciding many such cases, but the issue here is not one of common law as defined in *Swift v. Tyson.* 41 U.S. 1 (1842). The judges in this Court are being asked to decide the ambit of a federal statute, and I do not think that we can defer to a state court construction of a federal statute on the grounds that the state courts will apply that law in the far larger number of cases. *See Erie R. Co. v. Tompkins,* 304 U.S. at 78. While I respect Judge Lefkow's reasoning (and,

were it my role to do so, I would agree with the proposition that the Plan ought to pay its share of attorneys' fees), I cannot concur with it. Apart from the deference argument offered in *Varco* there is no justification for the merits of the result in that case.

Therefore, I agree with Judge Reinhard on the merits. There is too much support for the proposition that state law cannot void explicit and lawful provisions in ERISA plans. *See, e.g, Cutting v. Jerome Foods, Inc.* 993 F.2d 1293 (7th Cir. 1993); *Ryan by Capria-Ryan v. Federal Express Corp.*, 78 F.3d 123 (3rd Cir. 1997).

For the reasons above, the plaintiff's Motion for Summary Judgment [7-1] is GRANTED. The defendant's Motion for Summary Judgment [8-1] is DENIED.

ENTER:

James B. Zagel
United States District Judge

DATE: 24 February 2003